**UNITED STATES of America, Appellee,**

v.

**John K. SMITH, Appellant.**

**No. 11610.**

United States Court of Appeals Fourth Circuit.

Argued Dec. 5, 1967.

Decided Feb. 5, 1968.

Joseph L. Peters, Jr., Court-appointed counsel, Alexandria, Va., for appellant.

Roger T. Williams, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief), for appellee.

Before SOBELOFF, BRYAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

We are to decide whether John K. Smith was (a) fairly and (b) constitutionally tried and convicted in the district court. We agree that prejudicial error with respect to the admission of evidence vitiates the trial. Judge Bryan and I would reverse and permit Smith to be tried again. Judge Sobeloff would also reverse the conviction, but believing that Smith was twice put in jeopardy in

violation of the Fifth Amendment, he is of the opinion that the Constitution forbids further criminal proceedings against Smith based on the facts which we now briefly narrate:[1]

### I. *Facts*

Several defendants, including Smith, were tried together, charged with operating a numbers racket from the Navy Annex in Arlington, Virginia. The federal nature of the offense stems from crossing state lines in the D.C. area. The indictments charged the defendants with substantive violations of 18 U.S.C. §§ 1952, 1953 and with conspiring to violate §§ 1084, 1952, and 1953. At the first trial, after the state had rested, the substantive counts against Smith were dismissed by the court. At that point, all of the jury defendants moved for mistrial on the basis of a prejudicial newspaper article. Judge Lewis polled the jury, found that several had seen the article and granted the motion as to the jury defendants.

What then occurred is set out in Roy's companion case, considered by a different panel of this court under the title United States v. Chase, 372 F.2d 453, 464 (4th Cir. 1967):

"Then he [Judge Lewis] said, 'Now, what does [*sic*] the defendants want to do that did not have a jury trial? Well, I am not even going to ask you. I am going to declare a mistrial on it * * *,' assigning as a reason that he ought not in fairness to the other alleged conpirators pronounce his judgment in the case of any of the alleged non-jury co-conspirators prior to allowing the guilt or innocence of all defendants to be adjudicated at the same time. Later in the proceedings, the judge stated that he granted a mistrial because he thought his failure to do so would be 'harmful or prejudicial, either way,' but that he might have decided the non-jury cases by hearing the rest of the evidence and would have done so had the non-jury defend-

---

ants been charged only in a substantive count."

With respect to the evidence question, on April 5, 1965, a police raid resulted in the arrest of all the conspirators except Chase and Smith. Carr, one of the leading figures, turned state's evidence and agreed to act as a government agent. In that capacity he communicated with Chase and continued the racket until July 18 when Chase was arrested. The only evidence of acts by Smith after April 5 shows that he acted as a messenger between Carr and Chase in an effort to secure $125.00 which Parrish, another conspirator, needed to post bond.

## II. *Admission of Irrelevant Evidence*

■ In *Chase* supra, we held that the conspiracy had ended on April 5 when all of the conspirators were arrested except Chase and Smith. Thus *acts* done by Chase after April 5 were held to be admissible against defendants other than Chase only if they were relevant to show "the previous existence of the conspiracy or the attainment of its illegal ends." 372 F.2d at 460. *Declarations* made after the conspiracy had ended were held to be admissible only as against the declarant. The court then went on to hold that acts done by Chase and Carr after April 5 were not admissible as against Parrish, one of the jury defendants, because they shed "no light on whether the previous conspiracy in fact existed nor * * * prove attainment of any of its illegal objectives." Since the trial judge "failed to limit, carefully and clearly, the jury's consideration of evidence after April 5 to Chase,"

Parrish's conviction was reversed. The same result obtained as to Roy, the other non-jury defendant, because "nowhere later in the proceedings, nor in stating why he concluded Roy was guilty, did the district judge give any indication that he placed no reliance on the evidence of events after April 5."

Roy's case cannot be distinguished from Smith's. To hold that the acts of Chase were admissible as against Smith, we would have to say that the conspiracy continued between Chase and Smith after April 5. It is true that Smith performed some acts after April 5 while Roy did not, but the extent of those acts was to help Parrish post bond; we are unwilling to hold that posting a criminal appearance bond was a part of the conspiracy.

For the sake of symmetry and consistency of treatment of two non-jury defendants we consider ourselves bound by *Chase*.[2] Smith, like Roy, and for the same reason, is entitled to reversal of conviction.

## III. *Double Jeopardy*

■■ The court in *Chase* held that defendant Roy was not immunized from further prosecution by reason of the double jeopardy clause of the Fifth Amendment. We think Smith's situation cannot be sufficiently distinguished from Roy's to justify disparate treatment.[3] Moreover, we in the majority conclude that the question of double jeopardy was rightly decided in *Chase*, and we adopt what was said by our Brother Winter, 372 F.2d at 463–466.

We think the Fifth Amendment as interpreted by the United States Supreme

---

2. We read *Chase* as meaning that the judge's instructions to the jury made it clear that the trial judge erred as to the relevancy of the post April 5th evidence. Since he permitted the jury to consider it, the court thought it probable that he himself considered it. So interpreted, *Chase* does not erode the normal presumption in non-jury cases "that the trial judge relied only on the evidence which was properly admitted." 2B Barron & Holtzoff § 972 (1961).

3. Roy manifested no objection to the declaration of mistrial, but even so the

*Chase* court held, aside from the question of waiver, that on the merits there was no violation of the Fifth Amendment. Smith did not object but let it appear on the record that he did not join in the motion for a declaration of a mistrial. Otherwise the cases are identical with respect to the application of the Fifth Amendment. Certainly there was no waiver by Smith. Cf. Gori v. United States, 367 U.S. 364, 365, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961) (done without petitioner's "active and express consent.")

Court from United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824), to United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), was meant to prevent oppressive exercise of the government's power to prosecute. To suffer through a criminal trial even though acquitted is not a pleasant experience. To be again and yet again subjected to further prosecution—despite acquittal—is frightening as well as unconstitutional, and it has never been even questioned that retrial after acquittal is flatly forbidden by the Fifth Amendment. But short of that we do not understand that the Supreme Court has yet adopted a simplistic theory, i. e., not twice means not twice. Instead, the Court has moved from a stated refusal to do so to a close scrutiny [4] of each case to see whether with reference to the particular facts there has been oppression and harassment. Thus it is quick to nullify a second trial conferred by a judge to help a prosecutor. Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Whereas, conversely, a second prosecution is allowed where the first one was terminated by a trial judge overly solicitous for the rights of the defendant. Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

Similarly, in *Tateo,* supra, where the invalidity of the first trial was declared as a matter of fairness to the defendant —and not to benefit the government—it was held that the Fifth Amendment does not preclude a second trial.

Although the discretion of the trial judge in determining whether to terminate a trial is undoubtedly being narrowed, as a practical matter, by awareness of the closer scrutiny to which the exercise of his discretion is now subjected, we do not understand that any member of the Supreme Court has taken the position that there is *no* discretion.[5] Apparently the formula is the same as it has always been: a discretion to be exercised "only in very extraordinary and striking circumstances." [6] The trick is to know those circumstances when one sees them. See, e. g., Howard v. United States, 372 F.2d 294 (9th Cir. 1967); United States v. DiFronzo, 345 F.2d 383 (7th Cir. 1965). We think the circumstances confronting Judge Lewis at the first trial as mentioned hereinabove and set out more fully in Chase, supra, 372 F.2d at 465, were sufficiently "extraordinary and striking" to accord him some reasonable discretion in how to proceed fairly to all concerned and that he did not abuse that discretion to harass or oppress Smith when he declared a mistrial.[7]

4. As recently as 1961, Mr. Justice Frankfurter, in Gori v. United States, 367 U.S. at 368, 81 S.Ct. at 1526 said: "It is also clear that * * * we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion."

5. If retrial after mistrial is deemed outlawed by the Fifth Amendment, the result may be to compel trial judges to the empty task of completing a trial which is known will be reversed on appeal.

6. Quoted favorably by Mr. Justice Douglas in Downum, 372 at 736, 83 S.Ct. at 1034 and quoted favorably by Mr. Justice Goldberg in Tateo, 377 U.S. at 470, 84 S.Ct. 1587 from United States v. Coolidge, 25 Fed.Cas. No. 14,858, p. 622. Compare the following quote from Gori v. United States: "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." 367 U.S. at 368, 81 S.Ct. at 1526.

7. The Supreme Court has recently denied a petition for certiorari where the mistrial was declared because of the trial judge's irritation with defense attorney's conduct. Lemongello v. New Jersey, 389 U.S. 858, 88 S.Ct. 99, 19 L.Ed.2d 123 (1967). See also the denials of certiorari in Ferrell v. Fulton, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 363 (1967) (alternate juror replaced regular juror after charge and without defendant's consent); Collins v. Tennessee, 389 U.S. 824, 88 S.Ct. 61, 19 L.Ed.2d 78 (1967) (sworn juror was replaced before evidence was taken because of bias).

Indeed, even from our detached and placid viewpoint, far removed from the need for quick decision that prevails in the courtroom, we think Judge Lewis chose the best way out of an unfortunate situation. To have then completed the trials of Smith and Roy might have doubled the investment of court time—not a factor entirely unworthy of consideration in a district burdened with one of the heaviest caseloads per judge in the federal system.[8] To have then proceeded to find the facts with respect to conspiracy would have been, we think, unseemly, for it is unlikely that the participation of the jury defendants could have been omitted. By so proceeding, there would have been forfeited the sometimes helpful influence of the jury verdict on the trial judge's findings on close, difficult questions of credibility, and the likelihood of contradictory verdicts would have been enhanced. Starting over—with respect to *all* defendants some two months later—seems to us both the fairer and wiser decision. Absent unfair purpose, and there is not the slightest intimation of it, we think the trial judge, on these facts, was not forbidden by the Fifth Amendment from declaring a mistrial and ordering retrial of Smith.

A judgment will be entered reversing the conviction and remanding to the district court for trial de novo if the United States Attorney elects to prosecute again.

Reversed.

SOBELOFF, Circuit Judge (concurring in part, dissenting in part):

As Justice Douglas aptly pointed out in his dissenting opinion in Gori v. United States, 367 U.S. 364, 370, 81 S.Ct. 1523, 1527, 6 L.Ed.2d 901 (1961), "the place one comes out, when faced with the problem of this case [double jeopardy], depends largely on where one starts."

My starting point, derived from a literal reading of the Constitution and the latest Supreme Court pronouncement on this precise issue, is that any premature termination of a prosecution, neither sought nor acquiesced in by the defendant, constitutes a bar to retrial unless the reason for aborting the proceeding falls squarely within a narrowly defined exception to the Fifth Amendment's prohibition of double jeopardy. See Downum v. United States,. 372 U.S. 734, 83 S. Ct. 1033, 10 L.Ed.2d 100 (1963). Therein lies my disagreement with the majority opinion in this case which apparently assumes that "absent an unfair purpose" a halting of a trial is permissible and a retrial following this eventuality is not prohibited by the Fifth Amendment.

The *Downum* case, supra, it seems to me, governs our situation exactly and forbids the majority's approach. In that case, after the jury had been impaneled and jeopardy had therefore attached, the trial court, upon the Government's motion, discharged the jury because the prosecution's star witness was missing. The defendant was tried before another jury two days later and convicted. Holding that there was no "imperious necessity" for the discharge and that the second trial was voided by the double jeopardy clause, the Court stated, "We resolve any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain and arbitrary judicial discretion.'" *Downum*, supra at 738, 83 S.Ct. at 1035.

Whether the facts of the instant case presented a "manifest" or "imperious necessity"—which, since it was laid down by Justice Story in United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824), has been the constitutional test for permitting a retrial following an aborted prosecution—raises such a doubt. Are we not compelled then to resolve it in Smith's favor and order his release rather than subject him to the rigors of yet another trial?

"Manifest necessity" permitting a trial court to exercise discretion to terminate

8. Administrative Office of the United States Courts, Annual Report of the Director, at II–36 (1967).

a trial prematurely exists "only in very extraordinary and striking circumstances." United States v. Coolidge, 25 Fed.Cas.No.14,858, pp. 622, 623 (D. Mass.1815). It is manifestly necessary to curtail a trial when a jury is unable to reach a verdict, United States v. Perez, supra; when a juror's bias surfaces, Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1894); when a participant in the proceedings dies or becomes ill, In re Earle, 316 Mich. 295, 25 N.W.2d 202 (1946); or when an advancing army makes the continuation of a trial inadvisable, Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). But not only was it not *manifestly* necessary to declare a mistrial in Smith's case, it was not necessary at all or even judicious to do so.

The facts of this case are simple. After the Government had presented its entire direct case against Smith and his alleged co-conspirators,[1] the court *sua sponte* declared a mistrial as to Smith because certain jurors had read a newspaper article about the criminal past of another of the defendants. The important fact is that Smith was being tried not to the jury but to the judge, who specifically noted that the article would have no effect on his own judgment. It is, of course, conceded by the majority that Smith's counsel effectively avoided waiving his double jeopardy objection by calling to the court's attention immediately following the declaration of mistrial that the ruling was wholly at the instance of the court.

While I agree that it was proper for the court to declare a mistrial, upon the jury defendants' motion, as to those defendants who were being tried by the jury, I see no reason, compelling or otherwise, for pursuing a similar course with regard to Smith. The court should have allowed Smith to present at that time any defenses he may have had and

concluded Smith's trial. If the court were concerned that its decision might have a prejudicial effect on the jury defendants' later trial, the court could have taken its decision under advisement until after the termination of the jury trial. It is not an unknown practice in a common trial for a judge, in his discretion, to defer announcing judgment in the case of defendants who have waived jury trial, so as to avoid influencing the jury's verdict in the cases of the remaining defendants. Since this path was readily available, Smith's trial did not present the "very extraordinary and striking circumstances" which the Supreme Court demands in order to declare a mistrial that will not serve as a bar to a second prosecution for the same offense.

The relatively innocent circumstances of the *Downum* case indicate that the oppression, harassment, expense and inconvenience, which the double jeopardy clause seeks to avoid by forbidding reprosecution, need not be present in the particular case for the Fifth Amendment to be applicable. See Judge Leventhal's concurrence in Carsey v. United States, 392 F.2d 810 (D.C.Cir.1967). Nevertheless it is pertinent to observe that during the Government's second bite at the apple, the prosecution did in fact present many more witnesses than were called at the first trial. This attempt by the Government, "with all its resources and power,"[2] to make a stronger showing upon reprosecution is precisely what the Fifth Amendment interdicts.

Even if the testimony at the second trial were identical to that in the first, the conclusion that this constituted double jeopardy would still follow. The Constitution declares unqualifiedly that no person shall "be twice put in jeopardy" for the same offense. It provides no exceptions, and the Supreme Court has ruled that the exceptions which the

---

1. Jeopardy attached as to Smith when the first witness was presented to the court. See, e. g., Clawans v. Rives, 70 App.D.C. 107, 104 F.2d 240, 122 A.L.R. 1436 (1939).

2. Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

426

exigencies demand must be severely confined.

The *Gori,* supra, and *Tateo*[3] cases, relied upon in the majority opinion, do not detract from *Downum's* viability and its strong presumption in favor of a defendant faced with a second prosecution. Nor do those decisions support the majority opinion in this case. *Gori,* decided two years before *Downum,* held that a second trial was permissible when the first trial was prematurely ended because of the court's solicitous, perhaps oversolicitous, regard for the defendant's rights. That, of course, was not what happened here, since the mistrial was not declared for Smith's benefit; indeed, his views and those of his counsel were specifically and intentionally disregarded. The court, after momentarily acknowledging the presence of the non-jury defendants, precipitously announced, "I am not even going to ask you. I am going to declare a mistrial * * *."

*Tateo,* as characterized by the majority of the Supreme Court, involved a situation wholly dissimilar to the one in question here. In *Tateo,* there was no prematurely terminated trial, but a judgment entered upon the defendant's coerced plea of guilty. Since that was an after-judgment situation, the Court held that upon vacating the erroneously entered judgment, the defendant could be made to stand trial again. That case is more analogous to a reversal of a verdict and judgment based upon tainted evidence and a remand for a new trial, at the instance of the defendant, than it is to a trial truncated by the court without justification and without the defendant's acquiescence.

Although I concur in the majority's holding that the judgment must be reversed because of improperly considered evidence, I do not agree with the court's ultimate disposition of the case, permitting a retrial. After reversing, I would enter an order dismissing the charges against Smith on the ground that the double jeopardy clause of the Fifth Amendment prohibits renewal of the proceedings after the trial court has unnecessarily and improvidently declared a mistrial.

---

3. United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).