**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**William Ervin ALFORD and Jimmie Ellis Scott, Defendants-Appellants.**

**No. 74–3154.**

United States Court of Appeals, Fifth Circuit.

July 30, 1975.

Ralph Kennamer, Mobile, Ala., for Alford.

D. Wayne Childress, Mobile, Ala. (Court appointed), for Scott.

Charles S. White-Spunner, U. S. Atty., Mobile, Ala., Irwin W. Coleman, Jr., Asst. U. S. Atty., for plaintiff-appellee.

Before GOLDBERG and RONEY, Circuit Judges and GROOMS, District Judge.

GOLDBERG, Circuit Judge.

The appellants in this case were indicted for conspiring to possess and sell untaxed liquor and for doing so in violation of 18 U.S.C. § 371 and 26 U.S.C. § 5205(a)(2). A mistrial was declared during the course of the first court proceeding on this indictment. In the second trial the defendants were found guilty. They appeal to this Court on the grounds that they were subjected to double jeopardy when they were retried. We believe that double jeopardy attached to appellant William Ervin Alford and therefore reverse his conviction; however, there was a "manifest necessity" to declare a mistrial in the first proceeding as to appellant Jimmie Ellis Scott and we therefore conclude that his retrial did not violate the Fifth Amendment's double jeopardy clause.

## I.

The circumstances leading to the declaration of a mistrial are these:

The United States Attorney for the Southern District of Alabama presented the Grand Jury a one count indictment alleging the conspiracy and fifteen overt acts involving these defendants. The Grand Jury, however, returned a seven count indictment, the first count of which alleged 21 overt acts. At the end of February, 1974, agents from the Bureau of Alcohol, Tobacco and Firearms of the Department of Treasury proceeded to serve arrest warrants, with the indictment attached, on each of the defendants. Unfortunately, the United States Attorney gave the agents the purported one count, 15 act, indictment by mistake and it was that piece of paper which acquainted the defendants with the charges against them. A few days thereafter the United States Attorney discovered the mistake and sent defendants and their lawyers a correct indictment by mail, return receipt requested. The attorney for appellant Alford received a copy of this correct indictment, though it is not clear whether he got it through the mail or in some other way. In any case, he came to trial prepared to defend against the seven count indictment. Record Vol. I. 267–68. Appellant Scott was not similarly illuminated. The United States Attorney admitted that in March of 1974 the envelope with the correct indictment of Mr. Scott was returned to his office. Mr. Scott's lawyer, D. Wayne Childress, claimed that he never received his copy of the correct indictment, and the U. S. Attorney does not dispute this claim.

Jury selection took place on May 13, 1974. All of the defendants and all of their counsel were present, along with the prosecution. Before the jury was selected the district court judge said in open court to prospective jurors:

Ladies and gentlemen, the case we are going to select a jury in now is that of United States of America against William Ervin Alford, Horace Miles, Corine Cleao Wooten, Jimmie Ellis Scott, Darrell Edgar Alford and Robert Earl Prince. *This is a seven count indictment. That means there are seven separate charges in this indictment.*

Record p. 4 (emphasis added). The judge then briefly outlined the charges, after which a jury was impaneled. None of the defense counsel or defendants said anything to the judge about the apparent discrepancy between the indictment originally sent to them and the judge's words to the jury. The actual trial began on May 20, 1974. Opening statements were made by each of the counsel, and two government witnesses were put on the stand. Court then adjourned for the day. At the beginning of court on May 21, defense counsel approached the bench, where some of the counsel claimed that they had just become aware that the single count indictments which they had received were not, in fact, the indictments they were defending against.

There was then a great deal of discussion in which the prosecutor explained the slip-up in his office. Each defense counselor told the judge whether or not he had received the corrected indictment, and all parties tried to sort out which defendant was named in which counts. Mr. Kennamer, representing Alford, said that he had received the seven count indictment. Mr. Childress, representing Scott said that he had not received the correct indictment and, when questioned by the judge, said that he had not caught the discrepancy at the time that the judge began impaneling the jury.

The district court judge was properly irritated at the confusion in the prosecutor's office. The following colloquy between the judge and the prosecutor, Mr. Favre, seeded the events from which the mistrial sprang.

THE COURT: We have a more serious question than that. These people have not been arraigned. That is a serious question. Can you travel on one count or do you want a mistrial?

MR. FAVRE: Of course, I suggest they waive the reading of the indictment.

THE COURT: Well, they only waived the reading of the indictment to count one.   .   .   .

THE COURT: You ought to raise Cain with your office for doing a thing like this. We have all of these witnesses and all of these times and these people haven't been arraigned but on one count. Now, don't you want to strike the other counts. That is all they have been arraigned on.

MR. FAVRE: Right now, the posture we are in, your honor, is telling me you are going to declare a mistrial or strike the other counts and proceed on count one.

THE COURT: Sure.

MR. FAVRE: Would your honor give me a few minutes?

After a recess, the conference continued with a specification of when correct indictments went out, who got them and who did not, and when some of the correct indictments were returned to the U. S. Attorney's Office after failure of delivery. The discussion finished this way:

THE COURT: We are getting back to fixing responsibility. The question is now about the people being arraigned. We have three that we know we couldn't reasonably assume that they were informed of what they had. There is only one that we can be certain that had gotten notice of it. Now, what do you want to do?

MR. FAVRE: Are you still going to make the same ruling?

THE COURT: I certainly am. People have to be arraigned before they come into this court. There is no way around it, and shouldn't be. People ought to know specifically what they are charged with.

MR. FAVRE: Would you give me a mistrial as to any and all defendants named in counts two through seven and I will proceed on count one.

THE COURT: No, sir. You are going to dismiss them or a mistrial as to all of them.

MR. FAVRE: Would you give me a minute to talk to the lawyers?

THE COURT: All right.

MR. FAVRE: Your honor, all counsel and myself have had a discussion in view of the circumstances that have arisen. I am willing to proceed on just one count against the defendant and have the court strike the other counts. Out of complete candor to the court, Mr. Kennamer then pointed out to us and Mr. Brutkiewicz that count one of the indictment that they say they got has how many overt acts?

MR. KENNAMER: Fifteen.

MR. FAVRE: Has fifteen overt acts listed. Count one of the indictment in the court file has something like twenty one. So, they are not willing to proceed on count one and so, a mistrial.

At this point, the judge announced to the jury:

Ladies and gentlemen, there seems there has been a slipup in the paper work in the indictments that were served on the defendants; the differences in those and the indictments they are now coming to trial on. So, I will declare a mistrial and you are discharged from your duty and you may go ahead about your duty.

## II.

### A. *Jimmie Ellis Scott*

While the government here contends that the defendants asked for the mistrial, we need not deal with that issue, since whether they did or did not, the facts noted above provide clear grounds for holding that there was a "manifest necessity" to declare a mistrial with respect to Scott and that the trial judge acted properly in doing so. Thus, Scott was not subject to double jeopardy.

■ The double jeopardy significance of a court's declaration of a mistrial without the consent of the defendant is governed by the doctrine of "manifest necessity". When the judge declares a mistrial on his own or the prosecutor's motion, a retrial is allowed only if there exists a manifest necessity for the declaration of a mistrial where "the ends of

public justice would otherwise be defeated." United States v. Perez, 1824, 9 Wheat. (22 U.S.) 579, 6 L.Ed. 165. In determining whether there is a manifest necessity for the declaration of a mistrial, the courts are to weigh the "defendant's valued right to have his trial completed by a particular tribunal" against the "public's interest in fair trials designed to end in just judgments." Wade v. Hunter, 1949, 336 U.S. 684, 690, 69 S.Ct. 834, 837, 93 L.Ed. 974.

In Illinois v. Somerville, 1973, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425, the Supreme Court faced a situation in which a state trial judge had declared a mistrial after a jury had been impaneled. The morning after the impaneling, the prosecutor had informed the judge that the indictment was fatally defective, in that it failed to assert a necessary element of the crime. After the mistrial had been granted and a conviction resulted from the second trial, the defendant appealed through the Supreme Court. The Court said:

A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. If an error would make reversal on appeal a certainty, it would not serve "the ends of public justice" to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court. This was substantially the situation in both Thompson v. United States [155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146] supra, and Lovato v. New Mexico [242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244] supra. While the declaration of a mistrial on the basis of a rule or a defective procedure that would lend itself to prosecutorial manipulation would involve an entirely different question, cf. Downum v. United States [372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100] supra, such was not the situation in the above cases or in the instant case.

The Supreme Court thus found that there was a "manifest necessity" for declaring a mistrial in the first proceeding and that a second proceeding was not barred.

■ The facts in the present case come very close to those in *Somerville.* Here the erroneous indictment failed not in the completeness of an individual count but rather in that most of the counts were not even present in the indictment received by Scott. Furthermore, there was not a complete recitation of the alleged acts which led to the legal conclusion expressed in the first count—the first indictment showed 15 acts, the second, unreceived indictment showed 21 acts in relation to the first count.

While appellate decisions cannot be predicted with certitude we are confident that, if a judge had forced a defendant to trial in a case in which the defendant had been informed just minutes before asking for the conference with the judge of the full charges against him and the acts constituting them, that judge would have been reversed on appeal. While this Court has not directly held on this proposition of law, we have often held that an indictment must sufficiently warn the defendant of the charges against him so that he may adequately prepare his defense. *See, e. g.,* United States v. Panzavecchia, 5 Cir. 1970, 421 F.2d 440; Van Liew v. United States, 5 Cir. 1963, 321 F.2d 664; *see also,* Hamling v. United States, 1974, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590; United States v. Miller, 5 Cir. 1974, 491 F.2d 638. There is little doubt that an appellate court would not consider mid-trial enlightenment sufficient to fulfill this obligation.[1]

1. The law is less than crystal clear in this Circuit as to whether the trial judge must explicitly consider less drastic alternatives to declaring a mistrial when a snarl in the trial arises. *Compare* United States v. Dinitz, 5 Cir. 1974, 492 F.2d 53, aff'd en banc, 504 F.2d 854, cert. granted and United States v. Kin Ping Cheung, 5 Cir. 1973, 485 F.2d 689 at 691 ("the

Manifest necessity does not exculpate the prosecution from the constrictions of the double jeopardy clause where there has been prosecutorial overreaching. We might have had a case of overreaching here if the prosecutor knew that several of the correct indictments had been returned to his office and who went to trial anyway. In that case the prosecutor would have let the defense counsel put on their opening statements, their witnesses, and cross-examine the government's witnesses knowing all along that there was a very good chance that defendants had not received the correct indictments. He would have been able to see the full defense while knowing that a defense motion for a mistrial, or a court declared mistrial, was likely. It would therefore have been his duty to come forward and to tell the judge before the jury was impaneled that there had been an error in the United States Attorney's office and to make sure that all defense counsel had, in fact, found out about the correct indictment. In the present case the prosecutor did not come forward. But here there was a critical intervening event which removed the burden of coming forward from the prosecutor, and protected the prosecutor from any imputation of overreaching. Here the trial judge had himself said before the impaneling of the jury: "This is a seven count indictment. That means there are seven separate charges in this indictment." This remark was made in the presence of both the prosecutor and defense counsel. None of the defense lawyers or defendants said anything at that time to indicate that they were unaware of the correct indictment containing seven counts. From the judge's remark and the reaction of defense counsel, the United States Attorney had adequate reason to believe that defense counsel knew of the correct indictments, so that we cannot say his failure then to apprise the court of his office's error constituted overreaching.

The judge's statement was not enough so that Scott's counsel could be forced to go to trial in light of his protestations that he had missed the judge's opening remark. The judge's statement was not a curative for the prosecutorial error in sending out a wrong indictment. Scott's lawyer claimed not to have been aware of six of the counts in the correct indictment and in this situation the judge was correct in declaring that a manifest necessity existed for declaring a mistrial in regard to Scott. But the silence of the defense despite the judge's remark was sufficient to permit the prosecutor to reasonably believe that defense counsel knew of the correct indictments, through whatever means. The prosecutor could not know that defense counsel did not know of the correct indictment. The prosecutor, therefore, was not overreaching when he did not himself come forward with information regarding the discrepancies.

We thus conclude that there was a manifest necessity to declare a mistrial as to appellant Scott and that the necessity was not fostered by prosecutorial overreaching. In these circumstances,

---

trial judge failed to inquire into the availability of less drastic techniques . . . It was accordingly improper for him to conclude that a 'manifest necessity' for a mistrial existed") with United States v. Pridgeon, 5 Cir. 1972, 462 F.2d 1094 at 1095 ("While it is true that there are alternatives to a mistrial, we cannot say under the circumstances of this case . . . that the trial judge abused his discretion by not adopting one of the alternatives"). *See also,* Illinois v. Somerville, *supra,* 410 U.S. at 477, 93 S.Ct. 1066, 35 L.Ed.2d at 438. (Marshall, J. dissenting). In any case no less restrictive alternative existed here. Merely dropping six counts and the six extra acts in the first count would constitute the "less drastic alternative"

to a mistrial which is always available—dismissing the case as to those points—but forcing this action would not give the prosecutor the chance to put the public interest in the adjudication of defendants in the balance. In some situations another alternative—granting a continuance—could have been considered. But in a situation such as the present one, where certain counsel were unprepared to defend against the correct charges such a continuance would have to be lengthy. It is not a realistic alternative to suggest that the trial judge keep the same jury impaneled over a significant length of time, as would be necessary here. *See* Dinitz, *supra,* 492 F.2d at 58.

double jeopardy did not attach upon his retrial and we affirm his conviction below.

## B. *William Ervin Alford*

Alford presents us with a different situation. His lawyer, Kennamer, said in the conference before the mistrial was declared he had received the corrected seven count indictment and that he was ready to stand trial. As Kennamer himself noted, he addressed his opening remarks to the jury on the supposition that he was defending against the multiple count indictment.

Thus Alford's appeal does not stumble where Scott's did—at the hurdle of manifest necessity. As the *Somerville* Court noted:

> The determination by the trial court to abort a criminal proceeding where jeopardy had attached is not to be lightly undertaken, since the interest of the defendant in having his fate determined by the jury first impaneled is itself a weighty one. United States v. Jorn [400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543] [cite]. Nor will the lack of demonstrable additional prejudice preclude the defendant's invocation of the double jeopardy bar in the absence of some important countervailing interest of proper judicial administration.

410 U.S. at 471, 93 S.Ct. at 1073, 35 L.Ed.2d at 435.

█ Here there was no important countervailing interest for declaring a mistrial. Kennamer proclaimed that he had received the correct indictment and was ready to go to trial on it. To say the least, it is by no means certain that a conviction of his client at the first trial would have been reversed had he subsequently appealed on the basis of an improper indictment. Nor does the United States Attorney even suggest that there was any other important policy fostered by the declaration of a mistrial as to Alford. While a mistrial was declared as to those defendants who claimed that they had not received the correct indict-ments, the trial as to the other defendants—including Alford—could have continued. Mere judicial convenience in handling co-conspirators in the same trial has never been held to constitute an interest in the magnitude of a "manifest necessity".

The Government's final contention is that defendants themselves moved for the mistrial and therefore they could be reprosecuted even if a manifest necessity to grant the motion was not present. In United States v. Romano, 5 Cir. 1973, 482 F.2d 1183, this Court quoted the plurality opinion in United States v. Jorn, and wrote: "[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by defendants for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error," 482 F.2d at 1187–88, *quoting* United States v. Jorn, 1971, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543.

We do not believe that the defendants moved for the mistrial in this case. A careful reading of the record discloses that the judge both initiated the suggestion of a mistrial and offered any alternative only to the prosecutor.

As the record recited in Section I shows, the district court judge first suggested the mistrial in alternatives that he proposed to the prosecutor: "Can you travel on one count or do you want a mistrial?" The prosecutor responded: "Right now, the posture we are in, your honor, is telling me you are going to declare a mistrial or strike the other counts and proceed on count one", to which the Judge said: "Sure". After some further conversation the prosecutor asked "Are you still going to make the same ruling" and the Judge said "I certainly am" and a moment later offered the explicit choice to the prosecution once again: "You are going to dismiss them [counts two through seven] or a mistrial as to all of them."

It was then the prosecutor who asked to talk to defense counsel. The choice

had been offered to him, but he wanted to get the consent of the assembled defense counsel in his proposed course of action. After conferring with defense counsel, the prosecutor told the judge that while he was willing to proceed on the single count in the second indictment—which had 21 overt acts—these defense counsel would not consent to proceed on that count since the mistaken indictment, which is all that some counsel had seen, contained only 15 acts. He concluded: "So, they are not willing to proceed on count one and so, a mistrial." At this point the judge declared a mistrial and dismissed the jury.

■ The appellee contends that defendants were offered an alternative to the mistrial and that by not taking it the resultant mistrial came "at the behest" of the defendants.

But the prosecutor cannot take the choice offered to him and give it to defense counsel to make in order to put the onus of coming forward on defendants. He cannot force the defense counsel into the position of either themselves asking for the mistrial—which consent would foreclose their appealing the double jeopardy issue—or explicitly agreeing to go to trial on the 21 act count and therefore waiving an appeal on the sufficiency of the indictment. The prosecutor here was offered one choice or the other. He cannot be permitted to insure that the resolution be immunized on appeal by turning the decision over to defendants at his own volition and forcing the defense to come forward and affirmatively accept it or reject it. To hold otherwise would be to allow just that kind of practice or procedure which the Supreme Court has repeatedly warned against: it would be a procedure which lent itself to prosecutorial manipulation—the prosecutor could make sure that the present tri-

al is not appealable by defendants by turning the choice over to them and then turning around and claiming that defendants' action was "affirmative".[2] See Downum v. United States, 1963, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100; Green v. United States, 1957, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199; see also United States v. Kin Ping Cheung, supra; McNeal v. Hollowell, 5 Cir. 1973, 481 F.2d 1145; cf., Illinois v. Somerville, supra, 410 U.S. at 464, 93 S.Ct. 1066, 35 L.Ed.2d at 431.

The prosecutor's action here was illegitimate. His blithe suggestion that the defense made a sub silentio motion overlooks the nub of the problem facing defense counsel, who at the time of the discovery could have done nothing to maintain the status of the case as it then stood. If they had continued with the trial some counsel would have faced the task of making an ad lib defense to accusations of which they had no knowledge until that moment. But according to the prosecutor's theory this affirmative action would have constituted a "waiver" on the issue of the sufficiency of the indictment. If, on the other hand, these counsel had thought this price too high, they could have refused the offer to drop the six counts. But according to the prosecutor's theory this action would constitute the consent which "waives" the double jeopardy issue. In other words, the Government asks us to hold that it can make an error and never suffer the consequences of it—the defendants who found themselves in this position are either forced into asking for a mistrial or forced into waiving the error and proceeding under whatever debilitation results from the prosecutorial error.

The constitutional bar to double jeopardy is not avoided by this sleight of hand. The record here indicates that no

---

2. This Court has also held that even where the defendant explicitly moves for a mistrial, his retrial is barred if the actions of the trial judge render the defendant unable to conduct his defense. United States v. Dinitz, supra. Because of our resolution of the present case we need not consider the applicability of Dinitz here.

defendants consented to a mistrial. We hold that the prosecutor's attempt to pass the decision on this issue to the defense was foul even if benign. The prosecutor could not take the actions he took and the results of those actions cannot figure in our resolution; it does not matter that the *judge* might have posed the question to some counsel without necessarily posing such a Hobson's choice.

The twist that the government attempts to place on the facts does not make defense counsel movents or legally acquiescent. The sacred constitutional right to be free of double jeopardy is not to be evaded by prosecutorial contortionism.

As this court held, in a case where defendant *had* asked for a mistrial:

> Using a defendant's consent to a mistrial to bar his subsequent complaint of double jeopardy implies that he has bound himself to accept an abandonment of the first trial by exercising something more substantial than a Hobson's choice.

Dinitz, *supra*, 492 F.2d at 59.

The United States Attorney here proposes nothing more than a Hobson's choice for some defendants. We will not force it on them and thereby force them to waive their constitutional right to a trial by the jury first impaneled.

There was no manifest necessity for the judge to declare a mistrial as to appellant Alford. Nor did Alford ask for or consent to the declaration of a mistrial when his lawyer refused to choose another option which had been offered to the prosecutor and which the prosecutor illegitimately attempted to pass on to all the defense counsel. We therefore believe that Alford was subjected to double jeopardy when he was tried a second time after a mistrial was declared in the first proceeding, and his conviction must be reversed.

Affirmed as to appellant Scott; reversed as to appellant Alford.