**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Cecil Arnold ODOM, a/k/a Bud Kelly, Defendant–Appellant.**

**No. 88–5687.**

United States Court of Appeals, Fourth Circuit.

Jan. 24, 1990.

Luther Charles West, Baltimore, Md., for defendant-appellant.

Barbara Slaymaker Sale, Asst. U.S. Atty., Baltimore, Md. (Breckinridge L. Willcox, U.S. Atty., Washington, D.C., on brief), for plaintiff-appellee.

---

## ON PETITION FOR REHEARING WITH SUGGESTION FOR REHEARING IN BANC

### ORDER

The appellant's petition for rehearing and suggestion for rehearing in banc were submitted to the Court. In a requested poll of the Court, Judges Phillips, Murnaghan, Sprouse, and Winter voted to rehear the case in banc; and Judges Ervin, Russell, Widener, Hall, Chapman, Wilkinson, and Wilkins voted against rehearing the case in banc. As a majority of the judges voted to deny rehearing in banc, and

As the panel considered the petition for rehearing and is of the opinion that it should be denied, with Judge Murnaghan dissenting,

IT IS ADJUDGED AND ORDERED that the petition for rehearing and suggestion for rehearing in banc are denied.

Entered at the direction of Judge CHAPMAN, Circuit Judge.

MURNAGHAN, Circuit Judge, dissents.

MURNAGHAN, Circuit Judge, dissenting from denial of rehearing *en banc:*

The case of Odom is quite simple. He was charged with murder of a federal witness. So was Fincham. Consolidation was deemed an appropriate way to deal with the situation, and a jury was impaneled and testimony taken in the joint trial. Jeopardy consequently attached as to each. After three days of trial, the district court, while acknowledging Odom's right to assert the theory that Fincham had been responsible for the killing, nevertheless became concerned that a fair trial against Fincham might be compromised so long as the joint trial continued with Fincham bearing the brunt of the testimony. Odom remained adamant in asserting his constitutional right, once trial had started before a jury, to continue before that jury to the end. Fincham, on the other hand, from a time prior to commencement of trial, moved for severance of his case.

Because the evidence that had been introduced only prejudiced Fincham, and was proper insofar as Odom was concerned, Fincham was the logically proper defendant for severance and retrial. Manifestly, by the same token, double jeopardy considerations came into play insofar as Odom, unprejudiced and demanding that his case be continued, was concerned. For Fincham no double jeopardy concerns arose since if his case was aborted he by his motion for severance and retrial waived any such concerns.[1] *See United States v. Dinitz,* 424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976).

The district judge decided to grant Fincham's motion for severance but, nevertheless, continued Fincham's trial with the same jury, necessarily aborting the trial in progress of Odom. Let us suppose that, in granting Fincham's motion to sever, the district judge intended only to end prosecution in a *joint* trial, leaving to be decided which of the two defendants should be removed from the existing and already commenced case and which one's now single trial should continue on.[2] The propriety of a resulting grant of mistrial in Fincham's case should have been apparent.

It is hornbook law that:

Once a jury has been impaneled and sworn, jeopardy attaches, and unless *manifest necessity* for a mistrial is shown by the prosecutor, the Double Jeopardy Clause prohibits further prosecution.

---

**1.** Of no little moment is the fact that, when the same scenario had evolved in the earlier joint trial of Fincham and someone named Benjamin, Judge Joseph Young in the United States District Court for the District of Maryland granted Fincham a severance (which he had sought) holding: "Severance of Fincham allows Benjamin to present his complete defense without unfairly prejudicing Fincham's case."

**2.** It could, however, be argued that by granting Fincham's motion for severance the court necessarily aborted the case against him, so that, contrary to the district court's actions, Odom's case would necessarily be the one continued.

*Cantrell v. Kelley,* No. 89–6621, slip op. at 5 896 F.2d 545 (table) (4th Cir.); *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). All viable alternatives must be unavailable. *Harris v. Young,* 607 F.2d 1081, 1085 (4th Cir. 1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980).

There was simply no manifest necessity for a mistrial in Odom's case, once the joinder for trial, a matter of judicial economy and prosecutorial convenience, had been done away with. In obedience to the Constitution, Odom's case should not have been discontinued and retried. Once the severance had occurred, it had to be Odom who went forward.

Since that seems to me pellucidly clear, the only other reason for a vote to deny rehearing *en banc* is a supposed lack of importance in the case.

But the necessity of maintaining uniformity counsels us to rehear Odom's case. Federal Rule of Appellate Procedure 35(a). The panel opinion concluded that as long as a manifest necessity for severance of defendants exists, the choice of which particular defendant is to receive a mistrial is not guided by necessity, rather the judge can choose, in his discretion, which defendant to sever. But the logical foundation in two previous Fourth Circuit cases seems to demand that a manifest necessity exist *as to each* defendant who receives a mistrial.[3]

In both *United States v. Chase,* 372 F.2d 453 (4th Cir.), *cert. denied,* 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967), and *United States v. Smith,* 390 F.2d 420, 422 (4th Cir.1968), we were presented with the question of whether a defendant is placed in double jeopardy if retried after a mistrial, granted for the sake of a prejudiced codefendant and not for the sake of the defendant who desires to continue with the trial in progress. In *Chase,* the court first found that the district court correctly granted a mistrial as to two codefendants when a prejudicial newspaper article was found in the jury room. 372 F.2d at 465. But the court also affirmed the declaration of a mistrial as to a third codefendant, Roy, who was being tried by the court not the jury. Judge Winter, who authored the opinion, stressed that it was necessary to declare a mistrial *as to* Roy, to protect the rights of the defendants already granted a mistrial in having a joint trial. *Id.* at 465–66. That made mistrial of Roy, to keep him in tandem with the other defendants, *manifestly necessary.*[4] The fact that some mistrial was manifestly necessary did not automatically imply that a mistrial *as to each* codefendant was manifestly necessary. *See People v. Cooper,* 111 Mich.App. 194, 314 N.W.2d 554, 556 (1981) (distinguishing *Chase* because that case's complexity made a continuation of joint trial necessary).

When the same double jeopardy issue was raised by another one of Chase's codefendants in the related case of *Smith,* the fact that the cases could not "be sufficiently distinguished from Roy's to justify disparate treatment" led to a similar refusal to find double jeopardy. 390 F.2d at 422. Not mentioned, but almost certainly present, was the consideration that one Fourth Circuit panel may not overrule another Fourth Circuit panel. Those considerations were not sufficient, however, to deter Judge Sobeloff from dissenting: "But not only was it not *manifestly* necessary to declare a mistrial in Smith's case, it was not necessary at all or even judicious to do so." *Id.* at 424, 425 (emphasis in original).

---

3. The panel's approach also conflicts somewhat with what we said in *Harris v. Young,* 607 F.2d 1081 (4th Cir.1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980). In determining whether manifest necessity exists for declaring a mistrial, less drastic alternatives must be considered. "If less drastic alternatives than a mistrial were available, they should have been employed in order to protect the defendant's interest in promptly ending the trial...."

*Id.* at 1085. Here, of course, aborting Fincham's trial and continuing with Odom was a less drastic alternative.

4. The recently decided *United States v. Von Spivey,* 895 F.2d 176 (4th Cir.1990), went off on the same grounds, honoring a claim of the remaining defendants "that they would be prejudiced if the trial continued with the appellant representing himself." Slip op. at 178.

In *United States v. Alford*, 516 F.2d 941 (5th Cir.1975), the Fifth Circuit took the same position as Judge Sobeloff holding in a similar case that the double jeopardy clause barred retrial. "Mere judicial convenience in handling co-conspirators in the same trial has never been held to constitute an interest in the magnitude of a 'manifest necessity.'" *Id.* at 947.[5] "There was no manifest necessity for the judge to declare a mistrial as to appellant Alford." *Id.* at 949. *See also Thomas v. Beasley*, 491 F.2d 507, 509–10 (6th Cir.) (barring retrial on double jeopardy grounds because mistrial not necessary *as to* Beasley when granted as to three codefendants), *cert. denied*, 417 U.S. 955, 94 S.Ct. 3083, 41 L.Ed.2d 674 (1974).

The entire debate seems to revolve around whether the need for a joint trial constitutes necessity for a mistrial as to one defendant when a codefendant is granted a mistrial. It seems understood that necessity must exist *as to each* defendant. In Odom's case, Judge Motz, had already precluded the possibility of a joint trial by granting a severance to Fincham. Hence, the joint trial reason is completely unavailable.

The case further involves an issue of not only exceptional importance, but constitutional importance as well. It centers on a by no means trivial matter. Odom stands indicted for murder. That is not a congenial fact. It generates little sympathy for Odom. Yet, we should not allow such a deplorable crime to minimize the exceptional importance of punishment for that dread event in a proper and fair way.

That a defendant may not be twice placed in jeopardy is "one of the oldest ideas found in western civilization. Its roots run deep into Greek and Roman times." *Bartkus v. Illinois*, 359 U.S. 121, 151–52, 79 S.Ct. 676, 696, 3 L.Ed.2d 684 (1959) (Black, J., dissenting). Blackstone considered it a "universal maxim of the common law of England, that no man is to be brought into jeopardy of his life, more

than once for the same offense." 4 W. Blackstone, *Commentaries* \*335. "Few principles have been more deeply rooted in the traditions and conscience of our people." *Bartkus*, 359 U.S. at 155, 79 S.Ct. at 697 (Black, J., dissenting).

There was undoubtedly an important reason in the minds of our Constitution's framers which led them to forbid the government from placing one in double jeopardy. The balancing of the government's interest in trying people accused of crime and the interests of the public to be free from the inconvenience amounting often to outright terror if the government can simply try and try and try again, with unlimited bites at the apple, had to be undertaken. The framers found the scales tipped in the interests of the public at large and against repeated, and hence undue, intimidation.

In fact, the framers were concerned enough not only to prohibit retrial following finding of *autrefois acquit* or *autrefois convict*, but also to outlaw twice placing a man on trial for an offense, whether or not the case proceeded to a conviction or acquittal. The English cases, precursors to American law, have not gone so far, requiring an *autrefois acquit* or *autrefois convict*, while in American constitutional law twice merely being put in jeopardy is forbidden. *See* C. Hampton *Criminal Procedure* 193 (3d ed. 1982); *Archbold: Criminal Pleading, Evidence & Practice* § 4–94, at 361 (43rd ed. 1988). Odom's case, being novel insofar as American precedent is concerned, presents a material question which deserves *en banc* consideration.

I respectfully dissent from the denial of rehearing *en banc*. Circuit Judge WINTER, Circuit Judge PHILLIPS and Circuit Judge SPROUSE join in this dissent from denial of *en banc* rehearing.

---

5. That the rule is even more so in the case of prosecutorial convenience, see Judge Winter in *Chase:* "Moreover, there is not the slightest suggestion that the convenience or benefit of the government was sought to be served." 372 F.2d at 466.