**Terry Lee HARRIS, Appellant,**

v.

**R. A. YOUNG, Warden, Appellee.**

**No. 79–6036.**

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1979.

Decided Oct. 19, 1979.

Ralph S. Spritzer, University of Pennsylvania Law School, Philadelphia, Pa., for appellant.

Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen. of Va., Richmond, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and FIELD, Senior Circuit Judge.

HAYNSWORTH, Chief Judge:

Harris was tried twice for the murder of Joyce Hutchins. His first bench trial ended when the judge, *sua sponte,* declared a mistrial because of noncompliance with his discovery orders. Harris was subsequently brought to trial before the same judge and found guilty. He then sought habeas relief claiming the second trial and conviction constituted double jeopardy. The district court denied relief and Harris appealed. We reverse, for we find the declaration of a mistrial was not supported by "manifest necessity" as required by the Fifth Amendment, and thus the second trial constituted double jeopardy.

## I.

Harris shot and killed Joyce Hutchins on December 19, 1971. He was promptly arrested and charged with her murder and with the use of an illegal firearm in the commission of a violent crime. After commitment to a mental hospital for examination, where Harris was found competent, his arraignment was scheduled for July 20, 1972.

On June 5, 1972, pursuant to the state rules of criminal procedure,[1] defense counsel sought the discovery and inspection of all tangible evidence to be introduced at trial.[2] On July 13, 1972, the court granted

---

1. Va.S.Ct.R. 3A:14(b)(2) provides:

   (b) *Discovery by the Accused.*

   \* \* \* \* \* \*

   (2) Upon written motion of an accused a court may order the Commonwealth's attorney to permit the accused to inspect and copy or photograph designated books, papers, documents, tangible objects, buildings or places or copies or portions thereof, that are within the possession, custody, or control of the Commonwealth, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. . . .

2. The motion sought to have the prosecution: produce and permit the defendant and/or his

the defense motion and ordered the production of the evidence by noon on July 17, 1972. The court order was not fully honored by the Commonwealth, and certain evidence was not produced.

Harris was arraigned as scheduled on July 20, 1972. He pleaded not guilty, waived his right to a jury trial and the trial began. The Commonwealth's first five witnesses were presented in an orderly fashion, and they testified to some of the facts surrounding the murder. The murder weapon, a report of the medical examiner and autopsy, and photographs of the deceased were introduced without objection. The sixth witness was a Mr. Wymer, a police investigator. Wymer was shown two photographs which purported to represent bone fragments and blood which covered the floor of the room where Hutchins had been shot. Wymer said that the photographs were accurate representations of the murder scene and identified what he asserted were bone fragments and blood. Defense counsel objected that Wymer was not an expert on the subject and the objection was overruled. Counsel then stated:

Defense Counsel: I will further object to admitting the photographs into evidence in that the Commonwealth has failed to provide the defense with an opportunity to examine a copy of these prior to trial as ordered by the Court.

The Court: Is it your position at this time—I wish you had informed the Court of this position before we started this case this morning. We're in the middle of a trial and we're here now having exhibits being introduced and you're now complaining about the fact that they have not satisfied a court order.

Defense Counsel: Your Honor, I can't anticipate what the Commonwealth will or will not introduce in evidence. He gave us statements here which had diagrams of the body. I assumed possibly this is all he intended to introduce through the expert. I can't anticipate what he plans to do.

The Court: What is your position at this time? Do you want this trial to go forward or do you want this trial to stop at this point?

Defense Counsel: Your Honor, I'm objecting to the introduction of those photographs on the basis that they have never been made available to defense counsel prior to trial and the introduction of same would violate Mr. Harris' constitutional rights.

The trial judge then ordered the prosecution and defense counsel to testify concerning compliance with the court's pretrial discovery order. Defense counsel testified that after he received no material by noon of July 17, as required by the order, he directed his legal assistant to communicate with the Commonwealth's Attorney. The Commonwealth's Attorney advised the employee that the material to be produced for inspection was available at the Prince William County Police Department. Defense counsel and his assistant proceeded there, but they were told the officer familiar with the matter was absent until July 19 and that no one present could be of help. Another call to the office of the Commonwealth's Attorney produced the advice that the documents would be made available there. When the men arrived at the office of the Commonwealth's Attorney, however, they were told the Bill of Particulars had been previously sent to them by mail. When nothing arrived in the mail on July 18, the following day, defense counsel sent the assistant back to the prosecutor's office to make copies of the answers to the defendant's pretrial motions. Defense counsel was provided with copies of the answers, but no reference to photographs appeared in the responses and no photographs were exhibited to counsel. Nothing arrived in the mail.

Following the testimony of both lawyers, the following colloquy took place:

The Court: There never has been filed in this Harris case answers to the Bill of Particulars. There's nothing in the official record.

attorney to inspect and copy or photograph all books, papers, documents, weapons or

tangible objects which the Commonwealth proposes to produce in evidence.

Commonwealth's Attorney: I think it's been filed. It may not be in the file.

The Court: I'll state this for the record. The Court on its own motion at this time declares a mistrial in this case and I state to you, [prosecution and defense counsel], you're officers of this Court and I find both of you derelict in your duties and responsibilities to this Court and the Court's order that I entered, I believe, on the 13th day of July.

I'll direct you at this time before you leave this court room, you are to sit down, both of you, and to go through this evidence and to examine it and reproduce any part and every part you desire to do so. Do you understand the order of this Court?

Defense Counsel: Yes, Your Honor.

The Court: This case will come on again on Term Day for a new trial date.

Defense Counsel: At this point I would like to state my objection to the Court declaring a mistrial in the case at this time, for the record.

The Court: [To defense counsel] I also want this record typed. I think you have placed this Court in quite an imposition and an awful lot of people by not having complained to this Court prior to this case getting underway and then at the time this evidence starts to get introduced, you start to begin making your objections. The order of this Court again is that you gentlemen get together and go through this evidence. There will be no further complaints to be made in regard to examination of it and you're going to stay here until you examine it and if you are not satisfied, you come across the street to my chambers and make the complaints today.

Harris was retried in October 1972 before the same judge, who found him guilty of both charges and sentenced him to life imprisonment on the murder charge and fifty years on the weapons charge. Harris appealed to the Virginia Supreme Court alleging his trial after a mistrial constituted double jeopardy, but the court declined to hear his case.

The district court rejected Harris' habeas claim and found the mistrial was supported by "manifest necessity."

## II.

■ The parties agree that jeopardy attached at the first trial,[3] and that Harris objected to the judge's *sua sponte* declaration of a mistrial. They also agree there was no prosecutorial or judicial misconduct, over-reaching, or bad faith involved in the mistrial ruling. Thus the controlling issue is whether the mistrial was justified by "manifest necessity."

The classic definition of "manifest necessity" is found in Mr. Justice Story's opinion in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824):

"We think that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office."

---

**3.** Because Harris was tried before a judge, jeopardy attached when the court began to hear evidence. *See Finch v. United States,* 433 U.S. 676, 677, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977); *Lee v. United States,* 432 U.S. 23, 27 n. 3, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *Breed v. Jones,* 421 U.S. 519, 531, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975); *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975).

*See United States v. Scott,* 437 U.S. 82, 92–93, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Arizona v. Washington,* 434 U.S. 497, 505–08, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *United States v. Sanford,* 429 U.S. 14, 15–16, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976); *Illinois v. Somerville,* 410 U.S. 458, 461–64, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn,* 400 U.S. 470, 487, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion); *Downum v. United States,* 372 U.S. 734, 735–36, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Gori v. United States,* 367 U.S. 364, 368–69, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961). Because of the differing factual situations which might mandate a mistrial, the Court has consistently refused to apply the standard in a rigid or mechanical fashion. *E. g., Arizona v. Washington, supra,* 434 U.S. at 506, 98 S.Ct. 824; *Illinois v. Somerville, supra,* 410 U.S. at 462–66, 93 S.Ct. 1066. Instead, each case must be carefully examined to determine if a "high degree" of necessity supports the mistrial order. *Arizona v. Washington, supra,* 434 U.S. at 506, 98 S.Ct. 824. In addition, *Arizona* and prior cases hold that a reviewing court must determine that the trial judge did not act irrationally or irresponsibly, and that the mistrial order reflects the exercise of sound discretion. 434 U.S. at 514, 98 S.Ct. 824.

The district court found the mistrial declaration was proper, and that the trial judge correctly aborted the trial to punish defense counsel for his failure promptly to object to noncompliance with the discovery order. Although it is not our duty to assess responsibility for the breakdown in discovery and the violation of the court order,

we note neither side was without fault. The Commonwealth's Attorney was under a specific court order to produce the evidence. He was also under a general professional obligation, as an officer of the court, to comply in good faith with the order. American Bar Association, *Standards Relating to the Prosecution Function and the Defense Function,* § 3.11(b) (App.Draft, 1971); *see generally* American Bar Association, *Code of Professional Responsibility,* D.R. 1–102(A)(5). Thus he may not be held blameless, though he appears not to have been informed that the police investigator was off duty and that the evidence had not been produced. Defense counsel was more blameworthy. He was informed that the investigator would be back on the 19th, but he made no effort to contact him on that day nor did he report to the Commonwealth's Attorney or to the judge that the evidence had not been produced.

■ In determining whether the trial judge exercised sound discretion in declaring a mistrial, we must consider if there were less drastic alternatives to ending the trial.[4] If less drastic alternatives than a mistrial were available, they should have been employed in order to protect the defendant's interest in promptly ending the trial, and the Commonwealth's interest in rapid prosecution of offenders. *See generally* American Bar Association, *Standards Relating to the Function of the Trial Judge,* § 6.3 (App.Draft, 1972). If the problem of nondisclosure could have been solved without trial disruption, it should have been. If

---

4. We recognize the Fifth Amendment does not require a trial judge to make an explicit finding of "manifest necessity" before ordering a mistrial; and that he need not discuss and reject, on the record, alternatives to a mistrial. *Arizona v. Washington, supra,* 434 U.S. at 501, 516–17, 98 S.Ct. 824. But *Perez* requires that we determine whether the mistrial order reflects the exercise of sound discretion. One major factor to consider in assessing the wisdom of the trial court's action is whether a mistrial was necessary. If obvious and adequate alternatives to aborting the trial were disregarded, this suggests the trial judge acted unjustifiably. Therefore, we must examine the alternatives to a mistrial. *See United States v. Jorn,* 400 U.S.

470, 487, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion); *United States v. MacQueen,* 596 F.2d 76, 82–83 (2d Cir. 1979); *United States v. Pierce,* 593 F.2d 415, 417 (1st Cir. 1979); *United States v. Sanders,* 591 F.2d 1293, 1299 (9th Cir. 1979); *United States v. McKoy,* 591 F.2d 218, 222 (3d Cir. 1979); *Dunkerly v. Hogan,* 579 F.2d 141, 146–48 (2d Cir. 1978); *United States v. Starling,* 571 F.2d 934, 941 (5th Cir. 1978); *United States v. Spinella,* 506 F.2d 426, 432 (5th Cir. 1975); *United States v. Kin Ping Cheung,* 485 F.2d 689, 691 (5th Cir. 1973); *United States ex rel. Russo v. Superior Court of New Jersey,* 483 F.2d 7, 14 (3d Cir. 1973); *United States v. Tinney,* 473 F.2d 1085, 1089 (3d Cir. 1973).

not, the responsible lawyer should have been punished, and not the defendant.

■ Here there are numerous potential remedies for noncompliance with the discovery order. Perhaps the most obvious response was to admit or exclude the photographs based upon a determination of counsel's fault. Because the photographs were not probative of guilt, it is inconceivable that either action could have afforded grounds for reversal or prejudiced the prosecution's case. The discovery rule allows for a continuance for disclosure and inspection if new matter surfaces upon trial.[5] This was an obvious solution to the problem. Indeed, the record indicates no reason why a short recess would not have sufficed to settle all discovery issues.[6] The rule explicitly authorizes the trial court to "enter such other order as it deems just under the circumstances." Although this power is not defined, the breadth of the language implies that the judge enjoys great power to insure that his orders are obeyed. Finally, there is no indication that the traditional remedies for attorney misconduct, including censure, reprimand, contempt, or recommendation of disciplinary proceedings were not available in this case. *See generally* American Bar Association, *Standards Relating to the Function of the Trial Judge,* § 6.5 (App.Draft, 1972). There is no indication that any of these less drastic alternatives was considered prior to the declaration of a mistrial.

■ After jeopardy attaches, the defendant possesses a valued right to have his guilt or innocence determined before the first trier of fact. *See United States v. Scott, supra,* 437 U.S. at 93, 98 S.Ct. 2187; *Crist v. Bretz,* 437 U.S. 28, 35–36, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Arizona v. Washington, supra,* 434 U.S. at 503, 505, 509, 516, 98 S.Ct. 824; *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Illinois v. Somerville, supra,* 410 U.S. at 466, 93 S.Ct. 1066; *United States v. Jorn, supra,* 400 U.S. at 484, 91 S.Ct. 547; *Downum v. United States, supra,* 372 U.S. at 736, 83 S.Ct. 1033; *Wade v. Hunter,* 336 U.S. 684, at 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). An improvidently granted mistrial precludes the particular tribunal, whether judge or jury, from passing on the accused's guilt and thus ending the confrontation between him and society. Because the Double Jeopardy Clause makes no distinction between bench and jury trials, the fact that Harris' trials were before the same judge is immaterial to a determination of whether his second trial violated the Fifth Amendment. *See United States v. Morrison,* 429 U.S. 1, 3, 97 S.Ct. 24, 50 L.Ed.2d 1 (1976); *United States v. Jenkins,* 420 U.S. 358, 365–66, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), *overruled on other grounds, United States v. Scott, supra; United States v. Boyd,* 566 F.2d 929, 932 n. 4 (5th Cir. 1978); *United States v. Ajimura,* 446 F.Supp. 1120, 1122 (D.Hawaii 1978). After jeopardy attached at the July 20 trial, Harris possessed a valued right to have the judge decide his case that day, based upon the proof the Commonwealth could adduce. *See* Westen & Drubel, *Toward a General*

5. Va.S.Ct. R. 3A:14(g) provides:

(g) Continuing Duty to Disclose, Failure to Comply—
If, after disposition of a motion filed under this rule, and before or during trial, counsel or a party discovers additional material previously requested or falling within the scope of an order previously entered, that is subject to discovery or inspection under this rule, he shall promptly notify the other party or his counsel or the court of the existence of the additional material. If at any time during the course of the procedings, it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, or it may grant a continuance, or it may enter such other order as it deems just under the circumstances.

6. In several cases the failure to grant a continuance was held an abuse of discretion, and the resulting mistrials were held not justified by "manifest necessity." *See United States v. McKoy,* 591 F.2d 218, 222–23 (3d Cir. 1979); *Mizell v. Attorney General of New York,* 586 F.2d 942, 947 (2d Cir. 1978); *Dunkerly v. Hogan,* 579 F.2d 141, 146–48 (2d Cir. 1978); *United States v. Tinney,* 473 F.2d 1085, 1089 (3d Cir. 1973).

*Theory of Double Jeopardy,* 1978 S.Ct.Rev. 81, 89–90.

One fundamental aim of the Double Jeopardy Clause is to prevent the state, with all its resources and power, from making repeated attempts to convict a person for an alleged crime. Thus, whenever the first trial is not completed, a second proceeding may be unfair. Delay in ending a case prolongs the time during which the defendant is stigmatized by unresolved charges. It increases the financial and emotional burden on the accused, and it may increase the possibility of a mistaken finding of guilt.[7] *See United States v. Scott, supra,* 437 U.S. at 87, 95, 98 S.Ct. 2187; *Crist v. Bretz, supra,* 437 U.S. at 35, 98 S.Ct. 2156; *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Arizona v. Washington, supra,* 434 U.S. at 503–05, 98 S.Ct. 824; *United States v. Martin Linen Supply Co., supra,* 430 U.S. at 569, 97 S.Ct. 1349; *United States v. Dinitz, supra,* 424 U.S. at 606, 96 S.Ct. 1075; *Serfass v. United States, supra,* 420 U.S. at 387–88, 95 S.Ct. 1055; *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

There is a strong public interest in affording the Commonwealth a fair opportunity fully to prosecute a person accused of criminal activity, but the prosecution may not proceed in violation of fundamental constitutional rights. One of those is that the person not be twice put in jeopardy. Harris was, for there was no manifest or high necessity for the declaration of a mistrial over the defendant's objection. It was declared on the basis of the presence of a very minor problem for which there were several obvious solutions which would have permitted the case to continue to a conclusion without material prejudice to either the prosecution or the defense and without material inconvenience to witnesses yet to be heard, the judge and other court personnel. Without any such necessity the declaration of the mistrial cannot be characterized as the exercise of sound discretion.

Because the first trial was improperly aborted, Harris had a constitutional right not to be retried, and his subsequent conviction cannot stand.

The judgment is reversed, and the case remanded to the district court with instructions to issue the writ of habeas corpus.

REVERSED AND REMANDED.

---

**7.** Harris was imprisoned for three months between his first trial and his conviction, a not insubstantial time to endure the burdens created by pending felony charges.