**Rooks E. CRAWFORD, Plaintiff,**

v.

**Peter J. FENTON, etc., et al., Defendants.**

**Civ. No. 80–38.**

United States District Court, D. New Jersey.

March 12, 1980.

Stanley C. Van Ness, Public Defender by James A. Vigliotti, Asst. Deputy Public Defender, Elizabeth, N.J., for plaintiff.

John J. Degnan, Atty. Gen. of New Jersey by Richard R. Uslan, Asst. Essex Coun-

ty Prosecutor, Newark, N.J., for defendants.

## OPINION

LACEY, District Judge.

Petitioner in this habeas corpus action, 28 U.S.C. § 2254, was, with others, indicted by an Essex County Grand Jury for having allegedly conspired "to violate the narcotics laws of the State of New Jersey, contrary to the provisions of N.J.S.[A] 24:21–24." Trial began before a jury in the New Jersey Superior Court on March 13, 1978. On April 11, 1978, after court instructions, jury deliberations began; on April 15, 1978, the trial judge, over petitioner's objection, declared a mistrial.

Petitioner's subsequent motion to dismiss the indictment on double jeopardy grounds was denied, as were his applications to appeal that denial to the Appellate Division of Superior Court and the Supreme Court of New Jersey. He then filed this petition here.

The petitioner is incarcerated in New Jersey State Prison and a detainer has been lodged against him, founded upon the aforesaid conspiracy charge. He faces retrial on the conspiracy indictment on or about March 17, 1980.

The petitioner's sole constitutional claim here is that the proposed retrial would violate the Double Jeopardy Clause of the fifth amendment, applicable to the states through the fourteenth amendment. He advances two arguments in this regard: first, that the findings of the jury at the trial "amounted to a verdict of acquittal"; second, that there was no "manifest necessi-

ty" for the trial judge's declaration of a mistrial.

Respondents' answer to the petition raises as defenses a failure to exhaust state court remedies and appropriateness of federal judicial abstention. At oral argument I held that neither defense possessed merit.[1] I shall now consider the remaining issue, the double jeopardy claim.

■ A claim that manifest necessity was lacking for declaration of a mistrial over a defendant's objection can be evaluated only in terms of the particular facts of a case. See, e. g., Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); United States ex rel. Russo v. Superior Court of New Jersey, 483 F.2d 7, 13 (3d Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973).

The trial judge's instructions to the jury were presented on Tuesday, April 11, 1978. In addition to telling the jurors that they were to return a verdict of guilty or not guilty on the conspiracy charge, he directed them to make supplemental factual findings, with respect to specific questions, if they returned a guilty verdict. Dealing with the scope of the conspiracy, these questions asked the jury to ascertain and state whether the defendants found guilty had conspired to possess a controlled dangerous substance [CDS]; had conspired to possess a CDS with intent to distribute it; or had conspired to distribute a CDS. The jury was also directed to state whether the CDS involved was heroin, or cocaine, or both; if cocaine, the jury was told to state the amount. 1 Tr. 38–39.[2] See, Verdict Sheet, Appendix A.

1. On exhaustion, see United States ex rel. Russo v. Superior Court of New Jersey, 483 F.2d 7 (3d Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973); and, as to abstention, to abstain would mean that the Double Jeopardy "right" would not be preserved.

2. Neither party has furnished any record reference explaining why the trial judge added these interrogatories. Respondents assert the questions were put to the jury so that the trial judge would not intrude on the jury's province as finder of fact if it became necessary to sentence

any of the defendants. N.J.S.A. 24:21–24, the statute which petitioner allegedly violated, provides that "[a]ny person who . . . conspires to commit any offense defined in this act is punishable by imprisonment or fine, or both, which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the conspiracy." Therefore, according to respondents, the trial judge believed that the statute required him to obtain answers to these supplemental questions for sentencing purposes.

During the succeeding days the jury passed several communications to the court and received additional instructions. Then, on the afternoon of Friday, April 14, the jury returned with its verdict. Four defendants were found not guilty of conspiracy, and three, including the petitioner, were found guilty. The jury was unable to reach a verdict as to the eighth defendant. 4 Tr. 17. In response to the supplemental questions, the jury found the guilty defendants had not conspired to possess, or to possess with intent to distribute, a CDS. Moreover, the jury answered in the negative the question whether the drug involved was heroin and the question whether the drug was cocaine. The jury did find, however, that the three guilty defendants had conspired to distribute a CDS. 4 Tr. 21–28.

Finding the jury's answers to the special interrogatories unsatisfactory, the trial judge, upon the jury's return to the courtroom, gave them the following instruction:

I have your verdict form in which you indicate you have found three defendants guilty of conspiracy, then you go on to say, and I ask you this question, now you are to consider the controlled dangerous substance as well as the amount, and *you say no heroin was involved and no cocaine.*

*Your verdict is in error.* You are to go back and deliberate and determine for me whether that verdict is correct or not. You go back to your deliberations. Your verdict form will be sent back.

4 Tr. 21 (emphasis supplied). This directive was not immediately understood by all the jurors. The transcript shows that some "[v]oices" said: "We don't understand." *Id.*

The judge answered: "You don't understand what? All right, I will send the jury back. You send me such note as you see fit, ladies and gentlemen." 4 Tr. 21–22. Counsel for one of the defendants promptly moved that the guilty verdict "be set aside as against the weight of the evidence." 4 Tr. 22. Petitioner's counsel joined in the motion, relying on the jury's finding that the conspiracy had involved neither cocaine nor heroin. 4 Tr. 22–23. The trial judge did not rule on these motions at this time.

The jury soon returned with a "corrected verdict form." 4 Tr. 29. While the jury again found that the defendants had not conspired to possess, or to possess with intent to distribute, a CDS, it substituted "no" for "yes" in response to the question whether the defendants had conspired to distribute a CDS. 4 Tr. 29. Continuing in his refusal to accept the verdict, and without giving counsel an opportunity to state their positions, the judge gave the jury additional instructions and once again directed the jurors to determine which CDS was involved in the conspiracy and the scope of the conspiracy. 4 Tr. 29–32.[3]

Shortly after resuming deliberations, 4 Tr. 33, the jury sent the following note to the court:

There has been no testimony as to what any of the codes were. It was not established whether or not pants was cocaine or heroin/coats was cocaine of heroin, and so forth. Therefore it would not be fair to answer that question. We would be guessing. Thank you.[4]

4 Tr. 35.

Advised of this note, counsel for a defendant moved for a directed verdict of acquittal, based upon the jury's expressed

---

**3.** Essentially, the trial judge instructed the jury that what he wanted to know was, if the defendants "are guilty of conspiracy to violate the narcotic laws, *I* want to know what the agreement was to violate about, whether it was heroin or cocaine, and then the quantities . . . ." He also noted that "conspiracy is a different offense from the possession." Essentially, what he was telling the jury was that in addition to finding that there was a conspiracy, they were to define the scope of the conspiracy

and what narcotic or narcotics were involved. 4 Tr. 29–30. Presumably, in this way, he wanted to assure that the verdict of guilty as to a conspiracy related to the conspiracy charged in the indictment and not some other conspiracy. . . *Cf. Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.2d 1557 (1946).

**4.** The actual note varies in slight and insignificant respects from the version found in the trial transcript.

inability to determine which drug was involved in the conspiracy. 4 Tr. 35–36. Petitioner's counsel joined in this motion.

Again without ruling on the motions for directed verdict, the judge presented instructions to the jury. 4 Tr. 41–43. The jury was again told to decide whether the CDS which was the subject of the conspiracy was cocaine or heroin.[5] Petitioner's counsel objected unsuccessfully to the instruction and moved that a verdict of not guilty be entered on the petitioner's behalf. 4 Tr. 47. After the jury retired, counsel and the court discussed the pending motions. The trial judge, without ruling on the motions, then told defense counsel he "would favorably consider" a motion for a mistrial. 4 Tr. 59–60. Petitioner's counsel neither declined nor accepted the offer, requesting "some time to think about it." 4 Tr. 60.

Shortly thereafter the jury sent out two more notes. The first, received at 5:10 p. m., stated, "We would like to go home." 4 Tr. 60. The second note, received five minutes later, informed the court that "[t]here are a few people who would like to reverse their verdict of guilty to not guilty." *Id.* Before recalling the jury, the judge made some remarks to counsel concerning his earlier charge to the jury. He also commented on a charge he had considered but had not given when he had last addressed the jury:

> I was going to ask you gentlemen then do you feel I should charge the jury if they don't find which controlled dangerous substance was the subject of the conspiracy, everybody should be found not guilty, but you see you gentlemen didn't ask for it and the criticism was I was in effect telling the jury or directing a verdict of guilty.

4 Tr. 61. This statement is of striking significance. The trial judge had available to him an instruction to the jury that might well have resulted in obtaining a consistent and acceptable verdict. Moreover, the giving of this simple and easily understood instruction was an option that the trial judge had available to him up to the moment that he declared a mistrial. It was an option that he never exercised.

Petitioner, pressing his motion, then argued that the jury had "to find beyond a reasonable doubt what in fact the object of the conspiracy is, and they have not been able to do that." 4 Tr. 67. The trial judge then denied the motions for a directed verdict, adding that all he had was a series of notes and not an actual verdict. 4 Tr. 69.

The trial judge then returned to the matter of a mistrial, observing that he had to decide "whether the jury has deliberated long enough and has been unable to reach a verdict on the identity of the substances which were the subject matter of the controlled dangerous substance, whether the Court should dismiss this jury and declare a mistrial by reason of the fact that the jury has not been able to reach an agreement." 4 Tr. 70.[6]

The judge added, however, that he would not declare a mistrial over defense objections, even though one of the jurors had asked to be excused from further deliberations. *Id.* After reflection, defense counsel agreed that they would prefer to let the jury continue its deliberations. 4 Tr. 71.

Meantime, the jury was left to deliberate without further instructions. The next communication from the jury was a request for information related to the questions of which drugs were involved and in what quantities: "We would like to hear the testimony on the chemist, and also any testi-

---

5. The instructions that were given at this point were rather confusing. It is clear from colloquy between the trial judge and counsel that the trial judge believed that if the jury found that the prosecution had failed to prove that the defendants agreed to deal in either cocaine or heroin, it should return a verdict of not guilty. Unfortunately, he did not so instruct the jury, either at this point or at any time.

6. This statement is somewhat inaccurate. The jury had consistently said it did not know which drug had been involved in the conspiracy. This was not a case of jurors unable to agree among themselves as to the type of drug involved, but a jury apparently unanimous in its belief that it did not know which drug had been involved. The trial judge was mistaken in characterizing this as a jury disagreement.

mony that would help us to determine what the codes would mean." 4 Tr. 71.[7] The judge asked the court reporter how long it would take to read to the jury the police testimony as to the meaning of the "codes." She responded that it would take four days to read back this testimony.

Soon thereafter the court received another note from the jury. This note read,"We did not consider questions 1 through 5 [of Appendix A] in our guilty verdicts which could have changed our verdict to not guilty." 4 Tr. 75. Defense counsel immediately requested the jury be polled to see if it had reached a verdict of not guilty. Id. The trial court declined to take this step, stating that it had "no indication" of a not guilty verdict. 4 Tr. 77. The judge took no action in response to this note other than to allow the lawyers to leave for dinner. 4 Tr. 77, 80.

At 8:10 p. m. the jury returned to the courtroom and heard the testimony of one of the prosecution witnesses. 4 Tr. 81. Twenty minutes later they retired for dinner. Sometime afterwards the jury sent out its last note of the night:

We have been here 12 hours. A lot of us are very tired and cannot concentrate. We ask you to please let us go home. We would like to know what your comments are on our other notes we sent you earlier.

4 Tr. 82. The court asked defense counsel for their reactions. Petitioner's counsel agreed that the jury should be allowed to leave for the evening; as for the second portion of the jury's note, he said that he would adhere to his earlier arguments. 4 Tr. 83.

The trial judge then announced that he was going to discharge the jury, record the verdict as received, and hear motions on Monday, April 17, for a mistrial or directed verdict. 4 Tr. 85. Before this step was taken, however, the judge gave defense counsel an opportunity to consider his proposed action. The defense attorneys op-

posed ending jury deliberations: "[W]e would ask the Court to have the jury press on, press on in their deliberations until an ultimate verdict is reached." 4 Tr. 86. Accordingly, the judge brought the jury back into court, dismissed them for the evening, and told them to return the next day, April 15. Id.

At the time court recessed, the trial judge knew that the jury had answered all of the supplemental questions in the negative and was unable to specify which CDS had been involved in the conspiracy. He also knew that "a few" of the jurors had changed their mind about the verdict of guilty of conspiracy. The jury had already told the judge it had not considered the supplemental questions in arriving at a verdict. Finally, he was aware that there was an additional instruction—one which was lawful and proper—that may well have resulted in the jury's coming to a coherent verdict.

The case resumed on the morning of Saturday, April 15. More testimony was read to the jury; then the jury withdrew. 5 Tr. 2. Petitioner's counsel repeated his motion for a directed verdict:

The jury has not determined—or what facts they determine I suggest on the facts are clear—they don't know what in the world the conversations were about. They can guess. They said they could guess, speculate, anything they would do concerning that would be pure speculation.

That's not their problem, not what they are supposed to do. If that were the case, the Court would have to say to them, ladies and gentlemen if all you can do is speculate, about the case, . . . you are saying the State has not proved the case beyond a reasonable doubt, and I think for those reasons, Judge, I would urge that the Court consider my motion with respect to a directed verdict of acquittal.

5 Tr. 5–6. Although not clearly expressed, this statement suggests the court might

7. There are again minor discrepancies between the actual wording of the note and the way it is

reported in the transcript.

instruct the jury that the prosecution had not carried its burden if the jury could not decide what drugs were involved in the conspiracy. This echoes the judge's thoughts expressed the previous day. 4 Tr. 61.

Some time after petitioner's counsel renewed his motion, the jury submitted its final note.[8]

Your Honor, after serious thought, we feel we cannot continue with this trial because (1) we did not consider questions one through five in reaching any verdict, (2) we feel that the times and amount of drugs is not necessarily the same types and amounts conspired to be possessed, distributed and so forth by the defendants on our case. Additionally, because of the above—because of the above five jurors feel they would reverse their guilty verdict.[9]

5 Tr. 6–7. When asked for his comments, petitioner's counsel reiterated his belief that a directed verdict should be entered, 5 Tr. 9; and this was the position of the other defense counsel. The prosecutor did not suggest any specific action, simply commenting that the jury was "hopelessly deadlocked" and "becoming more and more confused." Id.

The judge then declared a mistrial. He stated that it was necessary for the jury to determine the type of CDS and its quantity to enable him to decide the appropriate punishment:

This in effect creates a manifest necessity on the part of the Court not to be oppressive to either the defendants presently at trial, to keep them here while the jury continues to indicate an inability to reach a verdict, or to insist that the jury which has up to now and as of its last writing by its note indicated an inability to reach

a verdict and a disagreement among five of the jurors at least on the verdict that was heretofore received that the mistrial will be granted over the objection of the defendants and the jury will be excused.

5 Tr. 12–13. Before he declared the mistrial, the judge noted that the jury had been deliberating for four days and that to comply with the jury's request to have testimony read to it would take another four days. 5 Tr. 9–10.

The issue before the court is whether a retrial of the petitioner would violate his constitutional rights.

Petitioner advances two theories. His first theory—the one which was vigorously argued to the trial court—is that, based upon the jury responses, the court should have directed a verdict of acquittal. This contention is without merit. The jury never returned a verdict of not guilty on which judgment could be entered. Indeed, at oral argument petitioner, recognizing that this theory was flawed, used it in conjunction with the claim that there was no manifest necessity for a mistrial, rather than as an independent basis for relief.

Petitioner's second claim is much more compelling. He contends that the trial judge violated his double jeopardy right in declaring the mistrial in the absence of manifest necessity.

The Double Jeopardy Clause reads, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." The test for determining if the clause has been violated when a trial court *sua sponte* declares a mistrial was formulated by Justice Story in *United States v. Perez*, 9 Wheat. (22 U.S.) 579, 580, 6 L.Ed. 165 (1824):

---

**8.** The trial judge, before he read the note to the attorneys and asked for their comments, described the note as "the last note." 5 Tr. 6. The record does not reflect why he so characterized it.

**9.** This suggests the appropriateness of a charge that the defendants could not be convicted upon any conspiracy other than the one charged. *See* note 3, *supra*. The record mis-

takenly reports the jury as having said that "the times and amount of drugs" were not necessarily the same as the types and amounts "conspired to be possessed, distributed and so forth." The transcript should have read "types and amounts of drugs." Minor differences between the note and the transcript exist as to style and spelling.

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

Respondents do not contend that "the ends of public justice" required declaring the mistrial. *Compare Illinois v. Somerville, supra.* Nor do respondents suggest that some test other than manifest necessity ought to be employed. Their sole argument is that the trial court acted properly in finding that manifest necessity required terminating the trial before the jury reached a verdict.

■ Respondent bears the heavy burden of showing that manifest necessity did, in fact, exist. *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *United States v. Jorn,* 400 U.S. 470, 483–85, 91 S.Ct. 547, 556–57, 27 L.Ed.2d 543 (1971); *United States v. McKoy,* 591 F.2d 218, 222 (3d Cir. 1979). *See United States ex rel. Russo v. Superior Court of New Jersey, supra,* 483 F.2d at 13 ("trial judges may declare a mistrial without barring reprosecution only in extraordinary circumstances"); *United States v. Aguiar,* 610 F.2d 1296, 1301 (5th Cir. 1980) (retrial must be "mandated by some form of manifest necessity").

■ A criminal defendant has a "valued right to have his trial completed by a particular tribunal." *Arizona v. Washington, supra,* 434 U.S. at 503 n. 11, 98 S.Ct. at 829 n. 11, quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed.2d 974 (1949). As was stated recently by the Supreme Court in *Arizona v. Washington,* 434 U.S. 503–05, 98 S.Ct. 829, 830:

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the peri-

od in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial. (footnotes omitted)

An additional factor, articulated by Justice Harlan in his plurality opinion in *United States v. Jorn, supra,* 400 U.S. at 486, 91 S.Ct. at 558, must be taken into account: the defendant's interest in "being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *See United States v. Evers,* 569 F.2d 876, 878 (5th Cir. 1978). This aspect of the protection afforded by the Double Jeopardy Clause is particularly significant in this case. Petitioner had a jury which had answered in the negative the questions posed by the court concerning the scope of the conspiracy and the drug with which it was concerned. Given these answers, it is not at all unlikely that a proper instruction to the jury would have resulted in a verdict of acquittal, a point discussed at greater length below.[10]

■ Seeking to carry their burden, respondents characterize the situation as one in which a deadlocked jury announced it could not reach a verdict. When a mistrial is declared because of a hung jury, the trial judge's decision to end deliberations is accorded great respect. *Arizona v. Washington,* 434 U.S. at 509–10, 98 S.Ct. at 832; *Rogers v. United States,* 609 F.2d 1315, 1317 (9th Cir. 1979) ("Jury deadlock is a classic example of manifest necessity for a mistrial"); *United States v. Sanders,* 591 F.2d 1293, 1296 (9th Cir. 1979). Thus, if this were simply a matter of petitioner's trial having been aborted because four days of

---

**10.** This is not a situation in which a defendant's desire to have the case decided by a particular jury rests on a belief that the jury is biased in his favor. *Cf. Arizona v. Washington,* 434 U.S. at 516 & n. 36, 98 S.Ct. at 836 & n. 36 (neither party has a right to a jury prejudiced in its favor).

jury deliberations had convinced the trial judge that the jury was hopelessly divided, this court would be extremely reluctant to upset the judge's determination that manifest necessity existed.

Careful review of the record, however, reveals that this is not the typical "hung jury" situation. Respondents, in their answer to the petition, assert that the jury, in their final note, said they could not continue "because they were deadlocked 7 to 5." Answer at 7. This analysis, to the extent it suggests that the jury felt it could not continue because of a deadlock, is simply incorrect. The jury did inform the court that it could not continue, but it did not rest this conclusion on an inability to agree. Rather, the jurors said they could not deliberate further because 1) they had not considered the court's interrogatories in reaching a verdict and 2) because of the discrepancies between the types and amounts of drugs found and the types and amounts conspired to be possessed, distributed, etc. Then, as a postscript, the jury told the court, "Additionally because of the above 5 jurors feel that they would reverse their guilty verdicts." Thus, nowhere in the note does the jury express the view that internal divisions have prevented it from reaching a verdict. The professed inability to continue arose out of factors external to jury agreement. These factors—which included, apparently, the jury's difficulty in deciding which drugs were involved, a jury finding of divergence between the proofs and the overt acts alleged, and a finding that the defendants had not conspired to possess, or to possess with intent to distribute, or to distribute, a charged CDS—created difficulty for the jury in reaching a verdict acceptable to the court. These factors, however, have nothing to do with jury unanimity on guilt or innocence. The only portion of the note dealing with the ultimate issue of guilt or innocence merely said that as a consequence of the jury's failure to consider the interrogatories, and because of the discrepancies over "times and amounts," five jurors no longer believed the defendants guilty. That part of the note did *not* say deep-seated divisions prevented a verdict.

In presenting a routine "hung jury" situation, the respondents have misperceived the critical issue. From the moment the jury first purported to return its verdict, the problem was that the verdict was "in error." 4 Tr. 21. Although the judge did not promptly explain why the verdict was defective, presumably this meant that the answers to the interrogatories were unsatisfactory for sentencing purposes. This was the initial problem with the verdict, it was the problem throughout deliberations on the evening of April 14, and it remained the sole problem up to the moment the judge declared a mistrial. Jury disagreement over a verdict did not represent the barrier to resolution of the case. Indeed, a verdict had been reached; the problem was that it was inconsistent with the jury's answers to the interrogatories. The jury had found the defendants guilty despite agreement among all jurors that the prosecution had not established which drugs were involved and that the scope of the conspiracy did not include an agreement to possess, to possess with intent to distribute, or to distribute. Petitioner lost his right to a final decision by the jury of his choice, not through jury disagreement, but by inconsistency between special interrogatories and the general verdict, and by jury confusion. To say that the jury's final note injected the element of a "hung jury" is inaccurate.

■ Whenever a mistrial is entered *sua sponte* by the court, the Double Jeopardy Clause imposes upon the reviewing court the obligation to see if the trial court properly exercised its discretion. *Arizona v. Washington, supra,* 434 U.S. at 514, 98 S.Ct. at 834; *Harris v. Young,* 607 F.2d 1081, 1084 (4th Cir. 1979); *United States v. Grasso,* 600 F.2d 342, 344 (2d Cir. 1979). Because the facts of this case do not present a "hung jury" situation, it would be inappropriate to use the deferential standard of review advocated by the respondents. Instead, this court must measure the trial court's exercise of discretion against a more demanding standard; it is against this standard that the prosecution must show that the judge did, indeed, face a manifest necessity for declaring a mistrial.

■ An extremely important consideration in evaluating a court's decision to declare a mistrial is the availability of alternatives. The fifth amendment does not require the court explicitly to find manifest necessity before declaring a mistrial; nor does the constitution require the court to discuss on the record other options. *Arizona v. Washington, supra*, 434 U.S. at 516–17, 98 S.Ct. at 835–36. However, it is still the task of a reviewing court to ascertain whether discretion was properly exercised.

> One major factor to consider in assessing the wisdom of the trial court's action is whether a mistrial was necessary. If obvious and adequate alternatives to aborting the trial were disregarded, this suggests the trial judge acted unjustifiably. Therefore, we must examine the alternatives to a mistrial.

*Harris v. Young, supra*, 607 F.2d 1085 n.4. (citations omitted)

The Court of Appeals for the Third Circuit has been particularly insistent on making certain that the trial court has considered alternatives less drastic than the mistrial. *See, United States v. McKoy, supra*, 591 F.2d at 222; *United States ex rel. Russo v. Superior Court of New Jersey, supra*, 483 F.2d at 14; *United States v. Tinney*, 473 F.2d 1085, 1089 (3d Cir.), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 156 (1973). In each of these three cases the court of appeals held double jeopardy barred a retrial, and in each instance the court reached that result largely because the trial court had failed to utilize an available alternative. The Third Circuit Court of Appeals has not been alone, though, in closely scrutinizing the record to ascertain whether some measure short of mistrial could have resolved the problem facing the court. *See, e. g., United States v. Pierce*, 593 F.2d 415, 417 (1st Cir. 1979) ("our first inquiry must be whether the court gave adequate consideration to the existence of any less drastic alternative"); *Dunkerley v. Hogan*, 579 F.2d 141, 146–47

(2d Cir. 1978), *cert. denied*, 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979); *United States v. Starling*, 571 F.2d 934, 941 n.10 (5th Cir. 1978) ("Although not necessarily determinative, the failure to consider alternatives does indicate an inadequate concern for the severe consequences of ordering a mistrial without the accused's consent"). *See also United States v. Clark*, 613 F.2d 391 (2d Cir. 1979) (noting that "[t]here were no reasonable alternatives to the ordering of a mistrial"); *Mizell v. Attorney General of State of New York*, 586 F.2d 942, 947 (2d Cir. 1978), *cert. denied*, 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979).

■ Accordingly, this court must determine what, if any, alternatives existed in lieu of a mistrial. Having carefully reviewed the trial record, this court finds that the trial judge neglected to use a simple, known, and available alternative: a new charge to the jury. Earlier the judge himself had mentioned the possibility of charging the jury that a verdict of not guilty must be returned if the jury did not know which CDS was the subject of the conspiracy. 4 Tr. 61. Shortly before the judge received the final jury note, petitioner's counsel referred, albeit obliquely, to the possibility that "the Court would have to say to [the jury], ladies and gentlemen if all you can do is speculate, about the case, . . you are saying the State has not proved the case beyond a reasonable doubt." 5 Tr. 6. Yet, though the judge had broached the prospect of giving the instruction, the instruction was never given.[11] Either charge might well have ended the inconsistency between the purported verdict and the jury's answers to the court's questions. Either, or both, of these instructions could have been given to the jury and either or both of them might have led to a final resolution of the case.

It is, of course, unknown whether these charges to the jury would have ended the trial. The jury might have returned a verdict of not guilty, or the jury might have

---

11. This alternative is not vulnerable to the criticism that it would have been a repetition of an adequate instruction already given. *Compare*

*United States v. MacQueen*, 596 F.2d 76, 82 (2d Cir. 1979).

"hung", or a verdict of guilty could have again resulted, or the jury might have persisted in returning a verdict inconsistent with answers to the special questions. Lack of a guarantee of success is not important; what matters is that this simple expedient of a new charge was an alternative that could have meant the completion of the trial. In view of the jury's expressions that the prosecution had not proved the scope of the conspiracy or its subject, however, it can reasonably be said that the court's failure to use this option meant petitioner lost his chance for a verdict from a jury which, if given these charges, might well have returned a verdict of not guilty.[12]

Furthermore, the mistrial was entered over the objection of petitioner's counsel. On the night of April 14 petitioner's counsel declined the trial judge's offer for a mistrial; he did not deviate from that position. The court itself recognized that it declared the mistrial over the opposition of defense counsel.

■■■ In acting against the wishes of petitioner, the trial court was exercising its discretion. This use of discretion is entitled to a certain amount of respect by a reviewing court. However, even with this deference, a close examination of the record reveals the trial judge abused his discretion in halting jury deliberations, given the foregoing alternatives available to him. The mistrial was declared without counsel's consent. Indeed, in light of the judge's obvious concern the previous night, reflected in his attempt to obtain counsel's consent to a mistrial, his abrupt termination of the trial the following day, without consulting counsel, is surprising. The declaration of mistrial becomes even harder to understand when one considers that the only difference from the night before—when the judge did not enter the mistrial—was the jury note on the morning of the 15th. Looked at closely, this note did not alter the situation in any major respect and cannot justify the mistrial. If on the night of the 14th the judge thought deliberations should continue, the note provided no reason for him to change his mind.

The petition is granted.

Counsel are to prepare a form of judgment in accordance with this opinion. There is probable cause to appeal.

The court has considered the following exhibits which are being transmitted to the Clerk of the Court for filing as part of the record of this case.

| | |
|---|---|
| R–1 | Essex County Indictment presented on April 19, 1977 |
| R–2 | Trial Transcript of April 11, 1978 |
| R–3 | Trial Transcript of April 12, 1978 |
| R–4 | Trial Transcript of April 13, 1978 |
| R–5 | Trial Transcript of April 14, 1978 |
| R–6 | Trial Transcript of April 15, 1978 |
| R–7 | Communications from the jury |
| R–8 | Brief and Appendix on Behalf of Defendant in Support of Motion to Dismiss the Indictment |
| R–9 | Transcript of Argument on Motion to Dismiss the Indictment |
| R–10 | Supplemental Memorandum in Support of Motion to Dismiss the Indictment |
| R–11 | Transcript of Decision Denying Motion to Dismiss the Indictment |
| R–12 | Notice of Motion for Leave to Appeal |
| R–13 | Brief and Appendix of the State of New Jersey in Opposition to Motion for Leave to Appeal |

---

12. Petitioner's counsel admittedly never directly requested either charge be given. However, his position from the time of the initial verdict had been that a verdict of acquittal should be entered. This remained his position after the last jury note. Therefore, he would have had no occasion to argue that a supplemental charge should be given, until he knew a mistrial was possible. The trial judge declared the mistrial without alerting counsel he intended to terminate the trial. Under these circumstances, petitioner's counsel could not have been expected to have argued before the mistrial that the charge should have been given.

APPENDIX A

VERDICT FORM—Indictment No. 2825–76                    1978

First Count—CONSPIRACY TO VIOLATE THE NAR-
 COTICS LAWS

We, the jury, find as follows:                    (Jury Determination)

| | | | |
|---|---|---|---|
| ROBERT WALLACE | NG | G | G |
| WILLIAM SALTERS | NG | G | NG |
| EDWARD CRAWFORD | NG | G | G |
| WENDELL CLAYTON | NG | G | NG |
| JAMES SYKES, JR. | NG | G | |
| GARRISON GREGORY | NG | G | NG |
| JESSE JOHNSON | NG | G | G |
| ARTHUR JOHNSON | NG | G | NG |

If you find any of the defendants Guilty of Conspiracy to Violate the Narcotics Laws, please answer the following questions:

As to the scope of the Conspiracy:

| | | | | |
|---|---|---|---|---|
| 1. | Possession of a Controlled Dangerous Substance | Yes | No | No |
| 2. | Possession with intent to distribute a Controlled Dangerous Substance | Yes | No | No |
| 3. | Distribution of a Controlled Dangerous Substance | Yes | No * | * |

Now you are to consider the controlled dangerous substance involved as well as the amount

| | | | | |
|---|---|---|---|---|
| 4. | Heroin | Yes | No | No |
| 5. | Cocaine | | | |
| | a. Less than 1 ounce, but at least 3.5 grams pure free base | Yes | No | No |
| | b. Less than 1 ounce, or more than 1 ounce but less than 3.5 grams pure free base | Yes | No | No |

As to the defendant ROBERT WALLACE,

We, the jury, find as follows:

| | | | |
|---|---|---|---|
| COUNT 18.  POSSESSION OF COCAINE | NG | G | NG |
| COUNT 20.  POSSESSION OF COCAINE | NG | G | NG |

* The jury originally answered this question "yes" but changed its answer to "no" after resubmission of the special interrogatories by the trial judge. 4 Tr. 29.